IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SK BIOPHARMACEUTICALS CO., LTD. and SK LIFE SCIENCE, INC., | ) | |
| Plaintiffs, | ) | C.A. No. 24-718 (JLH) (CJB) CONSOLIDATED |
| v. | ) | [redacted] |
| AUROBINDO PHARMA LIMITED, et al., | ) | **Original Version Filed: October 29, 2026** **Public Version Filed: November 9, 2026** |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO FILE SUMMARY JUDGMENT MOTION AND REQUEST FOR EXPEDITED BRIEFING**

Dominick T. Gattuso
HEYMAN ENERIO
GATTUSO & HIRZEL LLP
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

*Attorneys for Defendant Apotex Inc.*

Kenneth L. Dorsney
Cortlan S. Hitch
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803

*Attorneys for Defendants Aurobindo Pharma USA, Inc. and Aurobindo Pharma Ltd.*

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Procedural History and Case Schedule ........ 2

B. The Asserted ’133 Patent ........ 3

C. Defendants’ Proposed Product Labels ........ 4

D. SK’s Infringement Proof and Related Deposition Testimony ........ 5

III. GOOD CAUSE EXISTS UNDER FED. R. CIV. P. 16(b)(4) ........ 6

IV. SUMMARY JUDGMENT IS LIKELY TO END THIS CASE ........ 7

A. *Hikma* and *Vanda* Clarify the Contours of Induced Infringement Claims ........ 7

B. As *Vanda* Illustrates, SK’s Infringement Claims Fail Under *Hikma* ........ 8

V. SUMMARY JUDGMENT IS LIKELY TO PROMOTE EFFICIENCY AND JUDICIAL ECONOMY ........ 13

VI. REQUEST FOR EXPEDITED BRIEFING ON THE PRESENT MOTION ........ 14

VII. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026) ........ *passim*

*HZNP Medicines LLC v. Actavis Lab'ys UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019) ........ 12

*Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*,
No. CV 23-152-JLH, 2026 WL 2875089 (D. Del. Sept. 24, 2026) ........ *passim*

**Statute**

21 U.S.C. § 355(j)(2)(A)(v) ........ 8

## I. INTRODUCTION

In these consolidated cases, Defendants Apotex Inc. ("Apotex"), Aurobindo Pharma USA, Inc., and Aurobindo Pharma Ltd. (the "Aurobindo Defendants"; together, "Defendants") respectfully submit this Motion for Leave to File Summary Judgment Motion requesting permission to move for summary judgment on the issue of whether Defendants are liable for induced infringement. Recent decisions by the Supreme Court (in *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580 (2026)) and this Court (*Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, No. CV 23-152-JLH, 2026 WL 2875089 (D. Del. Sept. 24, 2026)) make clear that this issue is suitable for resolution now, pursuant to Federal Rule of Civil Procedure 56, because no reasonable finder of fact could conclude that Defendants' ANDA labels actively, affirmatively encourage infringement of the claimed methods.

To accommodate the requested summary judgment motion, Defendants are willing to postpone the bench trial currently scheduled in February 2027. There is no threat of a launch at risk (and, therefore, no risk of a motion for injunctive relief) as neither Defendant will be eligible to launch their products until 2032, at the earliest. Further, should they prevail in obtaining summary judgment on this issue, Defendants are willing to abandon their remaining defenses, including invalidity, to obviate the need for further litigation, including trial, on those defenses.

Defendants additionally request that briefing on the present Motion for Leave be expedited and propose that any response be due on November 6, 2026 and Defendants' reply be due on November 10, 2026. The parties will begin exchanging pertinent sections of the proposed pretrial order next month as the case advances to trial. Expedited briefing on the present Motion for Leave may permit the Court to determine whether summary judgment briefing will proceed before the parties expend substantial resources in compiling the pretrial order and preparing for trial. On

October 20, 2026, Defendants met and conferred with Plaintiffs SK Biopharmaceuticals Co., Ltd. and SK Life Science, Inc. ("SK"). On October 26, 2026, SK represented that it opposes this Motion and any expedited briefing.

As set forth in the attached Proposed Order, should the Court grant this Motion, Defendants propose that Defendants' Opening Brief in Support of Summary Judgment be due on December 18, 2026; SK's Opposition Brief be due January 22, 2027; and Defendants' Reply Brief be due on February 12, 2027; and that the Court schedule a hearing on the Motion at the Court's convenience.

## II. BACKGROUND

### A. Procedural History and Case Schedule

This is a consolidated Hatch-Waxman action alleging patent infringement arising from Defendants' filing of Abbreviated New Drug Applications with Paragraph IV certifications challenging SK's U.S. Patent No. 11,654,133 ("the '133 patent"). The products at issue are proposed generic versions of SK'S XCOPRI® (cenobamate) tablet product, which is indicated for the treatment of partial-onset seizures in adult patients. Defendants contest infringement and validity of the '133 patent.[1]

The Orange Book for XCOPRI® lists the '133 patent, which expires in 2039, along with U.S. Pat. No. 7,598,279 ("the '279 patent"), which expires in 2032. Defendants cannot launch their respective proposed ANDA Products until the expiration of the '279 patent, at the earliest.[2]

Fact and expert discovery are now complete. A Pretrial Conference is set for February 11,

---

[1] Because the '133 patent covers only methods of treatment, and Defendants do not treat any patients, SK's infringement claims are limited to inducement.

[2] The Aurobindo Defendants submitted a Paragraph III certification to the '279 patent, meaning they are not seeking FDA approval before the '279 patent expires in 2032. Apotex submitted a Paragraph IV certification to the '279 patent but later agreed with SK to a Partial Consent Judgment and Stipulation of Dismissal including an injunction against infringing the '279 patent. D.I. 96.

2027, and a 5-day bench trial is scheduled to begin February 22, 2027. D.I. 27. The proposed pretrial order is due on February 4, 2027. *Id*. The parties agreed to a pretrial exchange schedule to facilitate preparation of the proposed pretrial order, with exchanges beginning November 12, 2026 and continuing until submission on February 4, 2027.

### B. The Asserted '133 Patent

The '133 patent is directed to methods of treating patients with epilepsy. It has one independent claim, with relevant language italicized:

> 1. A method for treating a patient who is suffering from epilepsy ***with co-administering*** a therapeutically effective amount of ***(i) [(1R)-1-(2-chlorophenyl)-2-(tetrazol-2-yl)ethyl] carbamate (cenobamate)*** or a pharmaceutically acceptable salt thereof ***and (ii) one or two antiepileptic drugs***, said method comprising:
>
> modifying the therapeutically effective amount of the antiepileptic drug to adjust AUC of the antiepileptic drug obtained after the co-administration having at least 5% difference to the level of AUC obtained after the administration of antiepileptic drug to the patient without cenobamate or a pharmaceutically acceptable salt thereof,
>
> wherein the therapeutically effective amount of cenobamate or a pharmaceutically acceptable salt thereof is from about 100 mg/day to about 400 mg/day, and
>
> wherein ***the antiepileptic drug is selected from the group consisting of phenobarbital and phenytoin***.

Ex. 1, '133 patent at 21:2-20.

Claim 1, as shown, requires co-administering a therapeutically effective amount of cenobamate and either (or both) of phenytoin and phenobarbital. Cenobamate, phenytoin and phenobarbital are anticonvulsants (*i.e.*, anti-seizure or anti-epileptic drugs ("AEDs")). The claim covers three combinations: cenobamate with phenytoin, cenobamate with phenobarbital, and cenobamate with both. Dependent claim 5 specifies the cenobamate/phenobarbital combination, while dependent claim 10 specifies the cenobamate/phenytoin combination.

The first requirement of the claimed methods, therefore, is co-administration. The claim cannot be infringed by administering cenobamate alone or in combination with AEDs other than

phenytoin or phenobarbital. The remaining requirements include "modifying the therapeutically effective amount" of either or both of the co-administered phenytoin and phenobarbital. Such modifications may be necessary for patient safety because of potential drug-drug interactions between cenobamate and phenytoin/phenobarbital when taken together.

### C. Defendants' Proposed Product Labels

Generic drug companies are required by law to have proposed product labels that mirror those of the branded reference product, with few permissible exceptions. Defendants' labels therefore substantially track the label for SK's XCOPRI®, including the same indications, dosage and administration, warnings and precautions, and drug interactions.[3]

Defendants' labels state in Section 1 that the proposed products are indicated for the treatment of partial-onset seizures in adult patients. Ex. 2 at APO_CENO_000184. They are not specifically indicated for combination or adjunctive therapy, and there is therefore no mention of combination therapy involving administration of cenobamate with phenytoin or phenobarbital, or any other drug. Similarly, the Dosing and Administration information in Section 2 does not mention phenytoin, phenobarbital, or any other drug. It includes a heading titled "Monotherapy and Adjunctive Therapy," but the information thereunder relates only to the dosing and titration for cenobamate *regardless of whether it is given as a monotherapy or adjunctive therapy*. *Id.*

References to phenytoin and phenobarbital appear in only two sections of the Full Prescribing Information. First, in Section 7, describing "Drug Interactions," and specifically in a table identifying pharmacokinetic drug interactions and the effect of cenobamate on plasma concentrations of other drugs, including other AEDs such as lamotrigine, carbamazepine and

---

[3] Apotex's Label is cited herein, but Aurobindo's label contains the same sections and content relevant here.

desmethylclobazam. *Id*. at -000192-93. The table in Section 7 warns, among other things, that cenobamate can increase the plasma concentrations of phenytoin and phenobarbital and provides guidance on dose adjustment to avoid associated safety risks. *Id*. The only other section referencing phenytoin and phenobarbital is Section 12.3, “Pharmacokinetics.” *Id*. at -000198-200. That section describes study results showing that concomitant cenobamate treatment increased phenytoin blood plasma levels by 70% and 84%, respectively, and increased phenobarbital blood plasma levels by 34% and 37%, respectively. *Id*. at -000199. It also states that phenytoin administration decreased exposure of cenobamate by 27-28%, while phenobarbital (and two other drugs) had no significant impact on cenobamate exposure. *Id*. at -000200.

Apart from the Highlights of Prescribing Information, which summarizes the Section 7.1 dose-adjustment guidance with a cross-reference to that section, phenytoin and phenobarbital appear nowhere else in Defendants’ labels, including the clinical studies descriptions of Section 14. There are no instructions to coadminister, or promotion of coadministering, cenobamate with any other AEDs, including phenytoin or phenobarbital, or any other drugs.

### D. SK’s Infringement Proof and Related Deposition Testimony

To support its claim of induced infringement and the necessary showing of specific intent, SK points only to Defendants’ proposed labels. SK identifies no marketing materials or other public statements to support induced infringement. And SK’s witnesses agree that the labels do not encourage the claimed co-administration.

Dr. Michael C. Smith is SK’s only infringement expert. At deposition, he conceded: “I saw no indication in any of the literature that the company is ever suggesting adding cenobamate to anything. That is, they’re not making any recommendation about what it should be added to.” Ex. 3, Smith Dep. Tr. at 243:9–21; *see also id*. at 207:9–20 (Table 5 “doesn’t say that you should select

phenytoin”).

In connection with Defendants’ obviousness defenses, SK has proffered the opinions of Dr. David G. Vossler on issues of objective indicia of non-obviousness and associated nexus between the asserted patent claims and SK’s XCOPRI® product. Addressing the XCOPRI label, which Defendants’ labels track, Dr. Vossler agreed that “[t]here’s nothing in this section that suggests it should be prescribed in addition to any . . . specific antiepileptic drug, including phenytoin or phenobarbital,” Ex. 4, Vossler Dep. Tr. at 118:11–20, and that the Table 5 entries for those drugs are not an instruction to co-administer, *id.* at 121:5–23.

Finally, Dr. Sunita Misra (SK’s Chief Medical Officer) testified both personally and as SK’s sole corporate representative under Fed. R. Civ. P. 30(b)(6). Ex. 5, Misra Dep. Tr. at 14:15–19. She agreed that the XCOPRI® label “does not tell a clinician whether or not it should be administered with another agent,” *id.* at 98:7–20, and “does not instruct a clinician to coadminister Xcopri as an adjunctive therapy with any other particular anti-seizure medication,” *id.* at 102:10–23.

Each witness thus described the labels’ phenytoin and phenobarbital content as safety guidance that applies only once a prescriber has independently chosen that combination—not as encouragement to choose that (or any) combination.

## III. GOOD CAUSE EXISTS UNDER FED. R. CIV. P. 16(b)(4)

Good cause exists to grant leave for summary judgment motion practice and to postpone the February trial. *Hikma* was decided just four months ago. Expert discovery closed in early September, and, in late September, this Court applied *Hikma* to materially similar circumstances in deciding *Vanda*. Defendants initiated the meet and confer process on October 14. Following a meet and confer and subsequent email correspondence, SK confirmed their opposition on October

26. There is no genuine material dispute as to the contents of Defendants' labels. And with no Defendant launches possible until 2032, conducting summary judgment proceedings and postponing trial will not prejudice anyone.

## IV. SUMMARY JUDGMENT IS LIKELY TO END THE CASE

### A. *Hikma* and *Vanda* Clarify the Contours of Induced Infringement Claims

As this Court recently explained, induced infringement requires "(1) direct infringement by a third party; (2) knowledge by the defendant that the induced acts constitute patent infringement; and (3) active steps to encourage direct infringement." *Vanda*, 2026 WL 2875089, at *4 (citing *Hikma*, 608 U.S. at 586-87). Defendants seek leave to move for summary judgment because no reasonable finder of fact could conclude that their proposed labels—SK's sole evidence of Defendants' alleged "active steps to encourage" infringement—satisfy the applicable test.

Active steps "need not be express, but they must be 'clear' to the relevant audience and 'affirmative.'" *Id.* at *8 (citing *Hikma*, 608 U.S. at 592, 594-95). Importantly, *Hikma* made clear that the touchstone of inducement is the conduct and intent of the accused inducer, not the expected effect on prescribers. "The question," in other words, "is not whether the purportedly inducing statements could be 'underst[oo]d' to induce infringement, but whether the statements constitute '*affirmative steps* to bring about the *desired result*' of infringement." *Id.* (emphasis added) (quoting *Hikma*, 608 U.S. at 594). Inducement cannot rest merely on a "chain of events through which statements made by [a defendant] could lead a healthcare provider . . . to prescribe" the drug for the claimed use. *Hikma*, 608 U.S. at 590 (quotation marks omitted).

Last month, this Court applied *Hikma* to grant summary judgment in *Vanda*, a case with facts strikingly similar to this one. In *Vanda*, the claims at issue required, in substance, (1) determining if a patient was on a beta blocker, (2) stopping the beta blocker, and (3) administering

the new drug (tasimelteon). *Vanda*, 2026 WL 2875089, at *2-3. This Court concluded that language appearing in Section 7 of the proposed ANDA label, which advised of potential *consequences* of such co-administration—"[n]ighttime administration of [beta blockers] may reduce the efficacy of tasimelteon"—was "not an affirmative step to bring about the desired result of infringement of the Asserted Patents, as a matter of law." *Vanda*, 2026 WL 2875089, at *5. The labels in this case compel the same result.

### B. As *Vanda* Illustrates, SK's Infringement Claims Fail Under *Hikma*

Independent claim 1 of the '133 Patent claims "[a] method for treating a patient who is suffering from epilepsy with co-administering" cenobamate and "one or two antiepileptic drugs." It is a method for combination therapy whose threshold requirement is administering a specific combination of drugs. Administering cenobamate alone (or in combination with any other drugs) does not and cannot infringe it. Every asserted claim, at a minimum, *requires* that a prescriber (a) affirmatively co-administer cenobamate with phenytoin or phenobarbital, and then (b) reduce the dose of that co-administered drug.

Defendants' proposed labels must, by statute, be the same as the XCOPRI® label. *See* 21 U.S.C. § 355(j)(2)(A)(v); *Vanda*, 2026 WL 2875089, at *3 n.4. SK's inducement theory rests entirely on Defendants' proposed labels. SK has no evidence of "active steps" beyond them. Like XCOPRI®, Defendants' products will be "indicated for the treatment of partial-onset seizures in adult patients." Ex. 2 at APO_CENO_000184. This includes no mention of, much less any specific indication for, cenobamate as an add-on therapy with phenytoin or phenobarbital. Section 2 on Dosage and Administration is also silent as to drug candidates for co-administration. It mentions "Monotherapy and Adjunctive Therapy" as a heading but is devoid of any reference to any other drug beside cenobamate. *Id*. The pertinent portions of Sections 1 and 2 are reproduced below:

## 1 INDICATIONS AND USAGE

Cenobamate tablet is indicated for the treatment of partial-onset seizures in adult patients.

## 2 DOSAGE AND ADMINISTRATION

### 2.1 General Dosing Recommendations

Monotherapy and Adjunctive Therapy

Cenobamate tablet is administered orally once daily with or without food. The recommended dosage and titration, which should not be exceeded because of the potential for serious adverse reactions *[see Warnings and Precautions (5.2)]*, is included in Table 1.

**Table 1: Recommended Dosage for Partial-Onset Seizures in Adults**

| | |
|---|---|
| Initial Dosage | |
| Week 1 and 2 | 12.5 mg once daily |
| Titration Regimen | |
| Week 3 and 4 | 25 mg once daily |
| Week 5 and 6 | 50 mg once daily |
| Week 7 and 8 | 100 mg once daily |
| Week 9 and 10 | 150 mg once daily |
| Maintenance Dosage | |
| Week 11 and thereafter | 200 mg once daily |
| Maximum Dosage | |
| If needed based on clinical response and tolerability, dose may be increased above 200 mg by increments of 50 mg once daily every two weeks to 400 mg. | 400 mg once daily |

*Id*.

Apart from the Highlights summary, which merely restates the Section 7.1 guidance, the labels contain three references to the claimed co-administered drugs. One of them, as in *Vanda*, appears in Section 7, the drug-drug interaction section. The subsection in question, Section 7.1 ("Effect of cenobamate on other drugs"), consists of the following table:

**Table 5: Pharmacokinetic Drug Interactions**

| Drug or Substrate Type | Effect of cenobamate on Drug or Substrate | Clinical Recommendation |
|---|---|---|
| Antiepileptic Drugs | | |
| lamotrigine | ↓ plasma concentrations | Because of a potential for reduced efficacy of these drugs, increase the dosage of lamotrigine or carbamazepine, as needed, when used concomitantly with cenobamate. |
| carbamazepine | ↓ plasma concentrations | |
| phenytoin | ↑ plasma concentrations | Because of a potential 2-fold increase in phenytoin levels, gradually decrease phenytoin dosage by up to 50 % as cenobamate is being titrated. |
| phenobarbital | ↑ plasma concentrations | Because of a potential for an increase in the risk of adverse reactions from these drugs, consider a reduction in dosage of phenobarbital or clobazam, as clinically appropriate, when used concomitantly with cenobamate. |
| desmethylclobazam, the active metabolite of clobazam | ↑ plasma concentrations | |
| | | |
| CYP2B6 Substrates | ↓ plasma concentrations | Because of a potential for reduced efficacy of these drugs, increase the dosage of CYP2B6 or CYP3A4 substrates, as needed, when used concomitantly with cenobamate. |
| CYP3A Substrates | ↓ plasma concentrations | |
| Oral contraceptives | ↓ plasma concentrations | Because of the potential for reduced efficacy of oral contraceptives, women should use additional or alternative non-hormonal birth control while taking cenobamate. |
| CYP2C19 Substrates | ↑ plasma concentrations | Because of a potential for an increase in the risk of adverse reactions from these drugs, consider a reduction in dosage of CYP2C19 substrates, as clinically appropriate, when used concomitantly with cenobamate. |

Ex. 2 at -000193. Two of the nine rows in the table address interactions with phenytoin and phenobarbital, respectively. Both advise that cenobamate can increase plasma levels of those drugs, and that the decreases in the doses of those drugs may be recommended if they are administered together. (The guidance for phenobarbital states only that prescribers should "consider" an unspecified reduction.) The same table lists various other drugs that may interact with cenobamate and provides similar guidance for avoiding or mitigating complications.

The only other references to phenytoin and phenobarbital in Defendants' labels appear in Section 12.3 ("Pharmacokinetics"). Ex. 2 at APO_CENO_000198-200. They describe the findings of the "Drug Interaction Studies" that led to the warnings in Table 7.1. *Id.* at -00199. First, Section 12.3 states that "[m]ultiple doses of concomitant cenobamate 200 mg once daily increased phenytoin mean Cmax and AUC by 70% and 84%, respectively, and phenobarbital mean Cmax

and AUC by 34% and 37%, respectively *[see Drug Interactions (7.1)]*." *Id*. Second, Section 12.3 states that "[p]lasma cenobamate multiple-dose exposure (Cmax, AUC) decreased with co-administration of phenytoin by 27-28%. However, repeated dosing of valproate, phenobarbital, and carbamazepine did not have any significant impact on plasma cenobamate multiple-dose exposure." *Id*. at -000200. All three references, at most, describe that it is *possible* to co-administer cenobamate with phenytoin or phenobarbital. But nothing in Sections 7.1 or 12.3 (or anywhere else in the label) *recommends*, *promotes*, or *encourages* prescribing cenobamate together with phenytoin or phenobarbital—or with any other particular drug identified on the label, for that matter. When it comes to administering drugs, the label only recommends, promotes, and encourages the use of cenobamate for its indicated treatments.

As for Table 5, it contains conditional safety information, not encouragement. It tells prescribers what to do if a care provider independently chooses to co-prescribe phenytoin or phenobarbital with cenobamate, or if a patient already happens to be on phenytoin or phenobarbital. It does not even suggest that such a situation is *desirable*, let alone urge anyone to create it. *See* Ex. 5, Misra Dep. Tr. at 98:7–20 (agreeing that label "does not tell a clinician whether or not it should be administered with another agent"). That means the label never takes the "*affirmative* step[] to bring about the *desired* result" that the claims require, which is co-administration *plus* dose modification. *Vanda*, 2026 WL 2875089, at *4 (emphasis added) (quoting *Hikma*, 608 U.S. at 594). Just as "all of the claims of the Asserted Patents" in *Vanda* "require[d] . . . discontinuing beta-blockers before administering tasimelteon," 2026 WL 2875089, at *5, all of the claims asserted here *require* that treatment providers co-administer cenobamate with phenytoin or phenobarbital, and only then practice the dose-reduction steps.

Indeed, if anything, by warning that cenobamate can raise plasma concentrations to

potentially dangerous levels, the label reasonably can be read to *discourage* the claimed co-administered combination. Dr. Smith himself agreed that physicians today are encouraged to take patients off phenobarbital or phenytoin because of their known adverse effects and drug-drug interactions. Ex. 3, Smith Dep. Tr. at 150:13–18. A warning that a combination poses risks and guidance on mitigating those risks is the opposite of "clear" and "affirmative" encouragement to use that combination in the first place.

At most, SK can argue that some doctors, having *independently* decided to add cenobamate therapy for a patient already taking phenytoin or phenobarbital (or vice versa), may follow the label's *dosing* guidance. *Cf. HZNP Medicines LLC v. Actavis Lab'ys UT, Inc.*, 940 F.3d 680, 702 (Fed. Cir. 2019) (label warning that "operates in an 'if/then' manner . . . does not encourage infringement"). But the label does not actively, affirmatively encourage co-administration of cenobamate with phenytoin or phenobarbital in the first place. SK's theory of infringement is precisely the kind of "how others may understand [] statements" reasoning *Hikma* rejected. The references to phenytoin or phenobarbital at issue are not "*active* steps to *encourage* infringement." *Vanda*, 2026 WL 2875089, at *4.

No trial is needed to adjudicate whether the label plausibly promotes or encourages infringement. The material facts are not in dispute. Even SK's witnesses agree on them. SK's Rule 30(b)(6) designee, infringement expert, and secondary considerations expert each conceded that the label does not specifically recommend or encourage combining cenobamate with phenytoin or phenobarbital, which is the first, indispensable step of the claim. *See supra* Section I.D; Ex. 3, Smith Dep. Tr. at 243:9–21; Ex. 4, Vossler Dep. Tr. at 118:11–20; Ex. 5, Misra Dep. Tr. at 102:10–23. Instead, each testified that if a physician decides to co-administer cenobamate with phenytoin or phenobarbital, the label advises how to potentially avoid safety risks arising from the

combination. Ex. 3, Smith Dep. Tr. at 207:9–20, 210:12–211:2; Ex. 4, Vossler Dep. Tr. at 121:5–23; Ex. 5, Misra Dep. Tr. at 97:25–98:6. Ultimately, these witness concessions are fatal under *Hikma* (and *Vanda*). The label is completely silent on the decision to co-administer, which is the threshold step of every asserted claim.

## V. SUMMARY JUDGMENT IS LIKELY TO PROMOTE EFFICIENCY AND JUDICIAL ECONOMY

Defendants seek leave to move for summary judgment on one discrete question: whether, under *Hikma* and *Vanda*, their labels actively encourage the claimed co-administration *and* dose-modification method as a matter of law. The answer depends on the label's undisputed text and is informed by indisputable admissions by SK's own witnesses. It does not depend on credibility determinations or competing expert opinions. Defendants therefore submit that this case is suitable for efficient resolution through summary judgment and propose that the trial currently scheduled for February be postponed to accommodate such a motion.

Granting this motion will promote efficiency and judicial economy. Given the fundamentally legal nature of the infringement inquiry and the limited factual record required to resolve it, engaging in extensive pre-trial preparation over the coming months—the parties' initial exchanges are due on November 12, 2026—will likely prove to be an unnecessary and wasteful exercise. Importantly, moreover, no party would be prejudiced by granting this motion and postponing a trial date, if any is ultimately required. Defendants' launches are already deferred to October 2032 by the unchallenged '279 patent expiry, so any adjustment to the trial schedule that the Court finds appropriate will cause SK no commercial harm.

Proceeding with trial may prove wasteful for additional reasons. Non-infringement based on the lack of any active encouragement to co-administer the claimed drugs is not the only defense Defendants have asserted. In addition to challenging other aspects of SK's inducement claims,

Defendants also assert invalidity defenses under 35 U.S.C. §§ 103 and 112. The invalidity defenses are supported or disputed by three additional experts on behalf of the parties. There is no need for the Court, the parties, the experts, and other witnesses, to prepare for and attend a trial that may be obviated by a straightforward summary adjudication of whether Defendants' proposed label actively encourages infringement as a matter of law. Moreover, if summary judgment is granted in Defendants' favor, Defendants are prepared to dismiss without prejudice their remaining defenses such that a trial would be unnecessary.

## VI. REQUEST FOR EXPEDITED BRIEFING ON THE PRESENT MOTION

Defendants also request expedited briefing on the present Motion for Leave. With expert discovery now closed and trial commencing in February, the parties have begun preparing the various sections of the pretrial order, with initial exchanges thereof due November 12, 2026. If the Court is inclined to allow Defendants' proposed summary judgment motion, expedited briefing may allow that decision to be made before substantial effort and resources are expended by the parties preparing for trial. Defendants propose that SK's response be due November 6, 2026, and Defendants' reply be due November 10, 2026.

## VII. CONCLUSION

Defendants respectfully request that the Court grant leave to file a summary judgment motion on the issue of induced infringement, enter a briefing schedule, and vacate the February 2027 trial date. Defendants further respectfully request that briefing on the present Motion for Leave be expedited.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Dominick T. Gattuso*
Dominick T. Gattuso (#3630)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
dgattuso@hegh.law

*Attorneys for Apotex Inc.*

MORRIS JAMES LLP

*/s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendants Aurobindo Pharma USA, Inc. and Aurobindo Pharma Ltd.*

Dated: October 29, 2026