IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SK BIOPHARMACEUTICALS CO., LTD. and SK LIFE SCIENCE, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 24-718 (JLH) (CJB) CONSOLIDATED |
| AUROBINDO PHARMA LIMITED, et al., | [redacted] |
| Defendants. | Public Version Filed November 24, 2026 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION**
**FOR LEAVE TO FILE SUMMARY JUDGMENT MOTION**

Dominick T. Gattuso (#3630)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
dgattuso@hegh.law

*Attorneys for Defendant Apotex Inc.*

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendants Aurobindo Pharma USA, Inc. and Aurobindo Pharma Ltd.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. SK'S PROCEDURAL OBJECTIONS ARE MERITLESS ........ 3

III. PLAINTIFFS' MERITS ARGUMENTS DO NOT JUSTIFY DENYING LEAVE ........ 5

IV. NO GENUINE FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT ........ 9

V. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Genentech, Inc. v. Sandoz, Inc.*,
592 F. Supp. 3d 355, 367 (D. Del. 2022) ........ 7

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026) ........ *passim*

*H. Lundbeck A/S v. Lupin Ltd.*,
87 F.4th 1361 (Fed. Cir. 2023) ........ 3

*HZNP Medicines LLC v. Actavis Lab'ys UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019) ........ *passim*

*Metacel Pharms. LLC v. Rubicon Rsch. Priv. Ltd.*,
No. 2023-2386, 2025 WL 1178384 (Fed. Cir. Apr. 23, 2025) ........ 3

*Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*,
No. CV 23-152-JLH, 2026 WL 2875089 (D. Del. Sept. 24, 2026) ........ *passim*

## I. INTRODUCTION

SK's Answering Brief confirms that this case is suitable for resolution on summary judgment and that leave to seek it should be granted. SK nowhere disputes that the asserted claims *require* co-administration of certain *specific drugs* as an initial step. The label plainly does not require this. Recognizing as much, and unable to identify any promotional materials, marketing statements, or other conduct by Defendants beyond the proposed ANDA labels, Plaintiffs premise their inducement theory entirely on asking the Court to read a single phrase *alluding* to potential adjunctive use *in general*, some (but not all) conditional drug-interaction guidance, and a single phrase pertaining to study data involving *unclaimed* adjunct drugs as an affirmative instruction, encouragement, or recommendation to practice the asserted claims. That is precisely the kind of label-only theory that can and should be resolved as a matter of law.

SK characterizes the '133 Patent as "directed to methods permitting the safe and efficacious co-administration of cenobamate to patients *already taking* phenytoin and/or phenobarbital." Answering Brief ("Br.") 11 (emphasis added). That reframing skirts the issue on which summary judgment can properly be predicated. Putting aside that SK does not discuss the claim *language* in any detail, and all but ignores the patent itself (*see id.* at 6), the statements in the label must actively induce, as a desired result, infringement of the claims as written. SK does not and cannot dispute that the claims at issue *require* co-administration of cenobamate and just one or two specific other drugs in the first instance. Inducement requires active encouragement, instruction, or recommendation of every step of a claimed method. Unless the label clearly, affirmatively encourages or recommends that a clinician co-administer the specific combination or combinations of drugs the claim requires, it does not induce infringement.

Here, the label affirmatively instructs only the administration of cenobamate for its

indicated uses. The Indications and Usage section makes no mention of co-administration. SK's principal other source, Section 7.1, only gives optional guidance and caution for various scenarios in which cenobamate affects other drugs in the body. But, on its face, it does not contain language recommending or encouraging any one of those scenarios. Ultimately, all SK can point to is the general phrase "Monotherapy and Adjunctive Therapy" and its belief that the label "convey[s] to the physician that cenobamate *can* be administered adjunctively," Br. 7 (emphasis added), plus study data obliquely involving *unnamed* AEDs. But if that were enough to transform the warnings and guidance in Table 5 into specific intent to induce, SK's reasoning means that Defendants have specific intent to induce practicing *all* of the co-administration safety guidance listed in Table 5, which includes at least four AEDs (plus four other classes containing countless drugs).[1]

As *Hikma* and *Vanda* now make clear, the question is not whether a physician may, based on vague or generic language in the label and their independent clinical judgment, conclude that they should co-administer cenobamate with phenytoin and/or phenobarbital at the same time. The Supreme Court rejected that mode of analysis in *Hikma*. The question is whether the accused label itself constitutes "affirmative steps to bring about the desired result" of infringement. *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 590 (2026) (quotation marks omitted); *Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.,* 2026 WL 2875089, at *4 (D. Del. Sept. 24, 2026). The focus is on the label's language, what it affirmatively provides, and whether its "statements [are] *designed* to stimulate others" to infringe, *id.* at 591, not on how some doctors may understand it. All of the expert testimony on which SK relies to argue against summary judgment, however,

[1] In addition to making no sense, this would introduce a separate basis for non-infringement—the claims restrict the co-administered AEDs to the *Markush* group "consisting of" phenytoin and phenobarbital. Co-administration with other AEDs (which SK necessarily argues is induced by Table 5) violates the closed nature of the language.

speaks to the latter. Drawing on disparate parts of the label, SK's experts purport to describe a chain of reasoning by which they would, from general language arguably *allowing* the claim to be practiced, understand the label to be *instructing* it. After *Hikma*, that is not a defensible approach.

The claims and statements in the labels as written are what matters here, and that is why this case is suitable for summary judgment. The claims require choosing to treat epilepsy by co-administering cenobamate with phenytoin and/or phenobarbital. That is the threshold step. But Defendants' labels do not plausibly encourage or recommend co-administration at all, let alone with any specific drug. A label that does not encourage making the threshold co-administration decision cannot induce the claimed method merely because it gives safety instructions if a physician independently opts to administer a specific, un-instructed combination. *See HZNP Meds. LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680, 701-02 (Fed. Cir. 2019); *accord H. Lundbeck A/S v. Lupin Ltd.*, 87 F.4th 1361, 1371 n.9 (Fed. Cir. 2023) (describing *HZNP* as "affirming that a label did not induce infringement when it did not instruct carrying out all of the claimed method's steps"); *see also Metacel Pharms. LLC v. Rubicon Rsch. Priv. Ltd.,* No. 2023-2386, 2025 WL 1178384, at *4 (Fed. Cir. Apr. 23, 2025) (label's "allowance of refrigeration, . . . merely describes the temperature range for refrigeration *if* the downstream [] user chooses to refrigerate").

At a minimum, the claims, the label, and the nature of the testimony SK cites in opposition—which amounts to these witnesses' *understandings* of what the label might *suggest*—suffices to warrant full summary judgment briefing on the issue. Defendants respectfully request that the Court vacate the existing trial date and enter Defendants' proposed motion schedule.

## II. SK'S PROCEDURAL OBJECTIONS ARE MERITLESS

As Defendants explained in their Opening Brief, the fundamentally legal nature of the infringement inquiry and the limited factual record required to resolve it here demonstrate that trial

is likely to prove an unnecessary and wasteful exercise. Opening Brief ("Op. Br.") 13-14.

SK's procedural argument against summary judgment, Br. 10-11, urges the counterintuitive conclusion that an in-person trial necessitating months of preparation is more efficient than postponing trial to accommodate a motion likely to resolve the case without one. It raises the specter of "requiring the Court to decide the same issue twice," Br. 10—a risk inherent in any summary judgment motion practice—but that makes little sense. SK overlooks that, given the essentially legal nature of the argument Defendants are making, even denial of a motion for summary judgment will likely substantially clarify and focus issues for trial.

SK also does not dispute that motion practice will entail no *material* prejudice, given that Defendants' launches are already deferred until October 2032. Instead, it argues that "Defendants' proposal would require Plaintiffs to oppose summary judgment while preparing the pretrial order and preparing for trial." *Id.* But additional work on the same underlying legal and evidentiary issues is a marginal burden—and in any event, Defendants' proposal entails *postponing* the trial date. On that point, SK's only objection is that the parties are already preparing pretrial disclosures and SK's witnesses have (in November) begun preparing for trial scheduled to take place in February. That is not a sound basis to keep the trial on the calendar given that summary judgment is likely to focus the issues for trial or allow the parties to avoid it entirely. Briefing will provide the Court with all of the expert testimony SK insists will transform the label's neutral, conditional language into affirmative statements designed to induce infringement.

SK also faults Defendants for waiting five months after *Hikma* to seek leave to file a summary judgment motion. Br. 9-10. But that argument ignores the significance of the two developments that proximately prompted this motion: this Court's recent *Vanda* decision, which applied *Hikma* on a summary judgment posture to a label-only ANDA inducement theory like this

one, and the completion of expert discovery in this case. Defendants moved promptly after *Vanda*, after conferring with Plaintiffs, and before the parties initiated their exchange of pretrial submissions. Plaintiffs assert that *Vanda* did not announce a new legal standard, Br. 10, but that misses the point: *Vanda* is this Court's application of *Hikma* and governing inducement principles to a materially similar safety-information label. It is the most apposite guidance for whether summary judgment is likely to streamline this case.

The relevant question is whether summary judgment has a realistic prospect of eliminating trial or materially narrowing it. It does. Defendants' proposed motion would address a central infringement question in the case: whether the proposed labels actively encourage the claimed method for (1) treatment by co-administration of specific drugs *and* (2) dose modification during such treatment. If summary judgment of non-infringement is granted, Defendants will not proceed to trial on their remaining defenses and will accept entry of final judgment of non-infringement, preserving appellate rights as appropriate.

## III. PLAINTIFFS' MERITS ARGUMENTS DO NOT JUSTIFY DENYING LEAVE

SK's Answering Brief makes clear that induced infringement can be resolved on summary judgment for two interrelated reasons, both confirmed by *Hikma* and *Vanda*. As established by expert discovery, SK has no competent evidence of the requisite "affirmative steps" to infringe the claimed method, just the kind of "how others may understand [] statements" reasoning *Hikma* rejected. And that, in turn, is because SK's asserted claims all require a step that the labels themselves do not plausibly encourage, recommend, or instruct in an affirmative, active manner.

SK's Answering Brief pervasively describes the asserted claims in general terms—what they are, at a high level, "directed to" or purportedly "cover," Br. 1, 4, 11-12, 19-20—but never actually quotes the claim language. The claims, however, are what matter here. Only they (and not a purpose, developmental history, or background clinical situation) can be infringed. Here, all of

the asserted claims incorporate independent claim 1:

> 1. A method for treating a patient who is suffering from epilepsy ***with co-administering*** a therapeutically effective amount of ***(i) [(1R)-1-(2-chlorophenyl)-2-(tetrazol-2-yl)ethyl] carbamate (cenobamate)*** or a pharmaceutically acceptable salt thereof ***<u>and (ii) one or two antiepileptic drugs</u>***, said method comprising:
>
> modifying the therapeutically effective amount of the antiepileptic drug to adjust AUC of the antiepileptic drug obtained after the co-administration having at least 5% difference to the level of AUC obtained after the administration of antiepileptic drug to the patient without cenobamate or a pharmaceutically acceptable salt thereof,
>
> wherein the therapeutically effective amount of cenobamate or a pharmaceutically acceptable salt thereof is from about 100 mg/day to about 400 mg/day, ***and***
>
> wherein ***the antiepileptic drug <u>is selected from the group</u> consisting of phenobarbital and phenytoin***.

Ex. 1, '133 patent at 21:2-20 (emphases added). The threshold step of the claimed method is to "co-administer[]" cenobamate and one or two other drugs, where those drugs are selected "from the group consisting of phenobarbital and phenytoin." *Id.*

SK dodges this as best it can. As its Answering Brief shows, though, its argument against leave to seek summary judgment ultimately depends on a gloss on the claims rather than the claim language itself. It repeatedly tries to reframe the patent as "covering" a certain "patient population" already taking phenytoin or phenobarbital, and from there argues that the labels' conditional safety guidance instructs physicians how to treat that population. *See, e.g.*, Br. 18 (claims involve "administering cenobamate to a patient already taking phenytoin or phenobarbital").

That, however, is not what the claims actually say. They do not describe providing treatment in a specific preexisting clinical situation or providing treatment to a subpopulation of patients already being medicated with phenytoin or phenobarbital. The claims describe only providing treatment for "a patient who is suffering from epilepsy"—not one already taking certain drugs—by using a specific "method." That claimed method *requires* treating patients with epilepsy by co-administering therapeutically effective amounts of cenobamate and phenytoin or

phenobarbital, and only then modifying the therapeutically effective amount of phenytoin, phenobarbital, or both. In other words, the claim does not address a "patient population" already being co-administered those drugs—it requires that a clinician *choose* to create a *member of that population* by, as an initial step, co-administering those drugs. SK must establish infringement of its claims as written, not claims as it may wish they had been written.

The law "requires active, not passive, inducement." *Hikma*, 608 U.S. at 594 (cleaned up). But where the asserted claims mandate co-administration, Defendants' labels are, at best, indifferent to it. The Indication and Usage focuses only on cenobamate. To the extent the label discusses other drugs at all, it, at best, makes co-administration expressly and wholly optional, and certainly does not recommend or encourage specifically "select[ing] phenobarbital or phenytoin." That places this case squarely in line with *HZNP*. Labels or instructions that operate in an "if/then" fashion—here, *if* a decision is independently made to co-administer cenobamate with other drugs, *then* follow the guidance provided for those other drugs—cannot induce infringement of claims that *require* steps that the label does not instruct (here, co-administration in the first place). *See HZNP*, 940 F.3d at 702; *see also Genentech, Inc. v. Sandoz, Inc.*, 592 F. Supp. 3d 355, 367 (D. Del.), (no intent where "label d[id] not require that any one of the claimed dose modifications be undertaken"), *aff'd*, 55 F.4th 1368 (Fed. Cir. 2022). Guidance for safe use if a physician independently chooses the combination is not instruction to use the combination.

SK's attempt to distinguish *HZNP* is fundamentally unpersuasive, relying on a *Hikma*-foreclosed, clinician-side understanding of what the label could suggest instead of what the label affirmatively provides. Br. 15-16. Referring (presumably) to its expert's understanding of the label to suggest "that adding cenobamate can be beneficial for a patient," *id.* at 15, SK says the labels "*instruct* that there are epilepsy patients already taking, for example, phenytoin, who would benefit

from the addition of adjunctive cenobamate," *id.* at 16. The labels do not "instruct" anything of the sort (and this is a revealingly unorthodox use of the term). Indeed, they barely even hint at such potential benefits, as SK admits that information is only discernible by scrutinizing clinical data included on the label—data that does not even involve the two claimed adjunct antiepileptic drugs (AEDs)[2]—and inferring that from a single phrase stating only that the studies "*were not adequately controlled* with 1 to 3 concomitant AEDs"). Ex. 2 at APO_CENO_000201 (emphasis added). SK's "for example, phenytoin," Br. 16—an "example" it does not draw from anything in the label—illustrates how little of SK's inducement theory is present in the label at all.

At most, the labels acknowledge the possibility of co-administration with one or more of a host of other drugs, warning of potentially dangerous interactions with many of them. But merely using the word "adjunctive" is not "instruction[] for co-administration." Br. 20. Plaintiffs' experts *at most* say that, in light of their preexisting professional experience, they *understand* the label to instruct practice of the claims in their entirety—including, apparently, the step of co-administering the specific drugs at issue—based on language alluding to potential co-administration, a table showing safety information for numerous potential co-administration scenarios, and study results that, upon scrutiny, involve unidentified AEDs (that were not phenytoin or phenobarbital). *See* Br. 14-15. *Hikma* and *Vanda* indicate that expert testimony about how a physician could combine background clinical practice with generic statements or conditional label information cannot compensate for the absence of affirmative encouragement included in the text of the label.

And when it comes to the label itself, SK's Answering Brief confirms that it has virtually

[2] SK contends that the label's "report [of] cenobamate's efficacy in clinical trials of patients already taking AEDs," Br. 15, and their "descriptions of the clinical trials and data from" two studies, *id.* at 8, will encourage practice of the claims. But phenytoin and phenobarbital were *not* co-administered with cenobamate in the two studies described in the label as Study 1 and Study 2. *See* Ex. J ¶ 105.

nothing to draw upon to establish active encouragement or recommendation of the threshold, mandatory cenobamate/phenytoin/phenobarbital co-administration step. Its argument ultimately hinges on interpreting (i) the heading "Monotherapy or Adjunctive Therapy" in Section 2 and (ii) the (mandatory) inclusion of "uncontrolled" studies that happen to describe adjunctive therapy (but not the *claimed* adjunctive therapy) in Section 14 as an affirmative recommendation that clinicians use adjunctive therapy—and not just any adjunctive therapy, but the *specific* combination of drugs the asserted claims explicitly require, merely because Table 5 has drug-specific cautionary guidance. *See* Br. 14. No reasonable finder of fact could deem these "statements *designed* to stimulate others" to co-administer at all, let alone co-administer the claimed combination. *Hikma*, 608 U.S. at 591. It also necessarily implies that Section 2 and Section 14 also suffice to establish induced infringement of every one of the co-administration safety measures identified in Table 5, even though each is expressly optional. The language SK points to cannot be, and is not, enough.[3]

## IV. NO GENUINE FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT

Plaintiffs repeatedly invoke expert testimony to contend that inducement is a factual issue that requires three days of trial and enormous pretrial effort to resolve. But the material facts are the labels' words and the witnesses' explanations about what those words do and do not signify to them. SK does not dispute the language or import of the expert testimony Defendants quoted in their Opening Brief; it points to *other* language that it contends shows that the label can be interpreted to encourage, recommend, or instruct co-administration. The rest is legal characterization based on SK's departure from the explicit requirements of the claim language.

---

[3] Even the label's conditional language addressing the claimed drugs does not offer a clear, affirmative instruction. The phenobarbital instruction does not direct any particular claimed reduction—it says only to "consider" some reduction, "as clinically appropriate," which leaves any reduction to clinical judgment. Ex. H at 123:11–124:7.

*See, e.g.*, Br. 19 (arguing testimony Defendants cited is not concession because other testimony shows label addresses "the *situation* the asserted claims cover—*i.e.*, a patient *already taking* phenytoin or phenobarbital to whom cenobamate is added" (emphasis added)).[4] But the claims require that the situation be actively created. *HZNP* affirmed summary judgment on a label-only record despite expert testimony because the label did not instruct all steps of the claimed method. 940 F.3d at 701-02. The same result is warranted here.

Plaintiffs, in other words, cannot create a genuine dispute by having experts insist that expressly conditional safety guidance amounts to "instruction" to practice the entire claim, or by citing testimony that assumes a threshold *step* of the method (choosing co-administration of specific drugs) to be a preexisting situation. The question is whether the label instructs, encourages, or recommends *all of the steps* of the asserted claims. Plaintiffs' witnesses confirm it does not instruct selection of phenytoin or phenobarbital, does not instruct adding cenobamate to them, and does not identify those combinations as preferred or uniquely beneficial. Ex. G at 207:16–20, 210:20–211:2, 212:15–213:10; Ex. H at 118:7–20, 121:10–23; Ex. I at 98:14–20, 100:15–101:22, 102:10–20. A trial is not necessary to elicit such testimony on the stand. The testimony SK relies upon cannot establish that any statements in these labels constitute "affirmative steps to bring about the desired result" of infringing these asserted claims. *Vanda*, 2026 WL 2875089, at *5.

## V. CONCLUSION

Defendants respectfully request that the Court grant leave to file a summary judgment motion on the issue of induced infringement, enter a briefing schedule, and vacate the trial date.

---

[4] SK offers nothing that would distinguish the "situation" involving patients taking phenytoin or phenobarbital from the "situation" involving patients taking any of the other drugs identified in Table 5. Reframing the issue does not solve the fundamental problem: the label does not specifically identify and encourage any one or two drugs as ones that should be co-administered.

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Dominick T. Gattuso*

Dominick T. Gattuso (#3630)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
dgattuso@hegh.law

*Attorneys for Apotex Inc.*

MORRIS JAMES LLP

*/s/ Kenneth L. Dorsney*

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
3205 Avenue North Boulevard, Suite 100
Wilmington, DE 19803
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendants Aurobindo Pharma USA, Inc. and Aurobindo Pharma Ltd.*

Dated: November 19, 2026